UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------x
SANDY ANDUJAR, NOORUL BARAK,

                                    Plaintiffs,

        -against-

                                                    Docket No.

WESTHAB INC.,ROBERT MILLER,
President of Westhab Inc.,                 COMPLAINT
JESSE JOHNSON Director                     **BRIEANT**
of Social Services for Westhab             JURY TRIAL
Inc., LOIS HINDS, Supervisor               DEMANDED
Westhab, Inc..                Defendants.
--------------------------------------------   **05 CIV. 9005**

Plaintiffs, SANDY ANDUJAR and NOORUL BARAK by their

attorneys, LA PIETRA & KRIEGER for a complaint allege as

follows:

## INTRODUCTION

1.    This is an action brought pursuant to the 14th

Amendment for denial of Equal Protection of Law pursuant to

42 U.S.C., § 200-e et.seq. (Title VII of the Civil Rights

Act of 1964) for discrimination on the basis of sex and

pursuant to pendent state law for claimed violations of

rights secured by the New York State Executive Law, § 296.

## JURISDICTION AND VENUE

2.    The jurisdiction of the Court is invoked pursuant to 28

U.S.C. §§1331, 1343 and 1367.

3.    The unlawful employment practices alleged herein were

committed in whole or in part in the Southern District of

New York.

1

4    Venue in the Southern District of New York is proper
since Defendant WESTHAB INC. has its Executive offices in
said district.

**PARTIES**

5.   Plaintiff SANDY ANDUJAR is a Hispanic-American Female
citizen of the United States and is a resident of
Westchester County.

6.   Plaintiff Noorul Barak is a Persian-American Female
citizen of the United States and is a resident of
Westchester County.

7.   At all times relevant herein, Plaintiff SANDY ANDUJAR
was an "employee" of Defendants within the meaning of 42
U.S.C.§§2000e, *et seq* protected against discrimination on
the basis of her sex .

8.   At all times relevant herein, Plaintiff NOORUL BARAK
was an "employee" of Defendants within the meaning of 42
U.S.C. §§2000e, *et seq* protected against discrimination on
the basis of her sex .

9.   Defendant WESTHAB INC. (hereafter WESTHAB) is a New
York Not for Profit Corporation and is engaged in the
business of providing housing and social services for
homeless and low income families in Westchester County, New
York.

10.  Defendant WESTHAB has and at all times relevant herein
had its principal place of business at 85 EXECUTIVE
BOULEVARD YONKERS, NEW YORK 10523.

11.   Defendant, Robert Miller (hereafter Miller), upon information and belief resides in the State of New York.  At all times relevant herein, Miller has been employed by WESTHAB, most recently as its President.

12.   Defendant, Jesse Johnson (hereafter Johnson), upon information and belief resides in the State of New York.  At all times relevant herein, Johnson has been employed by WESTHAB, most recently as its Director of Social Services.

13.   Defendant, Lois Hinds (hereafter Hinds), upon information and belief resides in the State of  New York. At all times relevant herein, Hinds has been employed by WESTHAB, most recently as a Supervisor.

14.   As Plaintiffs' superior over most of their employment at WESTHAB, Miller had the power to make personnel decisions regarding Plaintiff's employment.  Miller has also aided and abetted the unlawful conduct described herein.

15.   As Plaintiffs' superior over most of their employment at WESTHAB, Johnson had the power to make personnel decisions regarding Plaintiff's employment.  Johnson has also aided and abetted the unlawful conduct described herein.

16.   As Plaintiffs' superior over most of their employment at WESTHAB, Hinds had the power to make personnel decisions regarding Plaintiff's employment.  Hinds has also aided and abetted the unlawful conduct described herein.

17.  At all times relevant herein, Defendant WESTHAB was an "employer" of the Plaintiffs within the meaning of 42 U.S.C.A. §§2000e, et seq.

18.  At all times relevant herein, Defendant Miller was an "employer" of the Plaintiffs within the meaning of 42 U.S.C.A. §§2000e, et seq.

19.  At all times relevant herein, Defendant Johnson was an "employer" of the Plaintiffs within the meaning of 42 U.S.C.A. §§2000e, et seq.

20.  At all times relevant herein, Defendant Hinds was an "employer" of the Plaintiffs within the meaning of 42 U.S.C.A. §§2000e, et seq.

### PROCEDURAL REQUIREMENT

21.  Plaintiffs have satisfied all procedural requirements prior to commencing this action.  Plaintiffs filed timely charges of sex discrimination with the United States Equal Employment Opportunity Commission (EEOC) and they bring this action within 90 days of their receipt of Notices of a Right to Sue issued by the EEOC.

### FACTUAL STATEMENT FOR PLAINTIFF SANDY ANDUJAR

22.  Plaintiff is a twenty-nine year old Hispanic female.

23.  In or around, July 10, 2002 Plaintiff began employment with Defendant Westhab as a Case Manager at one of their facilities in Yonkers, New York.

24.  Plaintiff's salary at the time of her hiring was

approximately $28,000.00.

25.  Plaintiff's duties included assisting homeless individuals and families in obtaining emergency and permanent housing.

26.  On or about July 20, 2003, as part of her duties, Plaintiff was assigned to visit a family that she believed to be potentially violent.

27.  During an interagency meeting held by WESTHAB, Defendant JOHNSON, who at the time was employed by the Westchester County Department of Housing, offered to accompany Plaintiff to meet the aforementioned family. Plaintiff had not been previously acquainted with Defendant Johnson.

28.  Upon information and belief, the Westchester County Department of Housing had authority over Defendant WESTHAB in that they oversaw and funded WESTHAB.

29.  Defendant Johnson called Plaintiff on a daily basis after meeting her on July 20, 2003.

30.  During one of these calls, Johnson advised Plaintiff of an open civil service position with the Westchester County Department of Social Services for which Defendant Johnson offered Plaintiff study help.

31.  At the end of August 2003, Defendant Johnson invited Plaintiff to a dinner meeting so he could provide her "insight" about the job with the Westchester County

Department of Social Services.

32.   During that dinner meeting, Johnson told Plaintiff that if she had sexual relations with him, that he would help her get the job. Johnson also told Plaintiff that "things could get better" for her at work because of his position and contacts within the Westchester County Government.

33.   Plaintiff acquiesced to Johnson's demands and accompanied him to the Elmsford Motel in the County of Westchester for the first of many sexual encounters with the understanding that Defendant would help Plaintiff get the job and that Defendant would help Plaintiff in her career.

34.   From approximately August 2003 to December 2003, Defendant Johnson continued to demand sex from Plaintiff and assured Plaintiff that he would help her in her career in exchange for sex.

35.   In or around September 2003, within a month of Plaintiff's having sexual relations with Defendant Johnson, she received a $500 bonus from WESTHAB.

36.   In or around December 2003 Johnson was offered a position as the Director of Social Services for Defendant WESTHAB where Plaintiff was employed.

37.   In or around December 2003, Johnson told Plaintiff that his being at WESTHAB would be good for her career because he would hire her as a Supervisor, with the understanding that their sexual relationship would continue.

38.   Plaintiff did not want the relationship to continue but was afraid of losing her job.

39.   In or around December 2003, Johnson was hired as Director of WESTHAB.

40.   On or about January 13, 2004, Plaintiff was severely assaulted by her husband, a Yonkers City Police Officer and the case received local media attention.

41.   Upon information and belief, Plaintiff was attacked by her husband because he had learned of Plaintiff's relationship with Defendant Johnson.

42.   In or around January 14, 2004, after she was physically assaulted by her husband, Johnson came to a family member's home where Plaintiff was staying.  Defendant Johnson asked Plaintiff to break up with her husband and again told her that he would hire her as a Supervisor.

43.   On or about January 15, 2004, Plaintiff told Johnson their relationship was over.

44. Johnson thereafter began to subject Plaintiff to increased supervision, criticism and complaints regarding her work.

45. In or around February 2004, on at least two occasions Johnson waited for Plaintiff in the parking lot after work demanding to know the status of their relationship.

46. In or around February 2004 while waiting for Plaintiff in the parking lot after work he coerced Plaintiff into having sexual relations with him in his car.

47. Plaintiff had sex with Defendant because he led Plaintiff to believe she was in danger of losing her job.

48. On March 19, 2004, Plaintiff sent an e-mail to Defendant

Miller, President of WESTHAB, seeking a meeting with him to discuss the sensitive situation she was involved in.

49. Miller never responded to Plaintiff's e-mail of March 19, 2004.

50. On or about, June 10, 2004 Defendant Johnson, asked Carmen Santiago, a co-worker at WESTHAB to have Plaintiff call him regarding the status of Plaintiff Andujar's relationship with Defendant Johnson.

51. Plaintiff asked Ms. Santiago to return the call in her presence and to tell Defendant Johnson that there was no relationship thereby rejecting his sexual advances.

52. On or about June 18, 2004, during a departmental meeting, both Plaintiff Andujar and Ms. Santiago were given written reprimands by Johnson regarding calling him on "non-company business."

53. The reprimands were retaliation for Plaintiff's spurning Defendant Johnson's advances.

54. Because of this outrageous lie, Plaintiff raised her voice at the meeting in response to the reprimand.

55. Following that meeting, Plaintiff's immediate supervisor, Defendant Hinds, chastised her for her tone of voice directed toward Johnson at the meeting.

56. Plaintiff then advised Ms. Hinds of the ongoing sexual harassment which Johnson was subjecting her to.

57. Defendant Hynes never reported any of Plaintiff Andujar's allegations of sexual harassment in violation of Defendant WESTHAB's policy on Sexual Harassment.

58.   Approximately two weeks after complaining of sexual harassment to Defendant Hinds Plaintiff was advised that she was being laid-off as a result of budget cuts.

59.   Upon information and belief, the budget cuts were not going to affect the caseworkers as at the time of Plaintiff's pretextual layoff there were three openings for caseworker positions at WESTHAB.

60.   Since Plaintiff's unlawful termination, Defendant WESTHAB banned her from the premises and locked her office so as to prevent her from retrieving her personal belongings.

61.  Upon information and belief Defendants have tampered with computers in Plaintiff's office in order to erase any files and e-mail correspondence that would support her claim.

62.   Upon information and belief Plaintiff's office was locked the same day that she was unlawfully terminated.

63.   Upon information and belief, prior to Plaintiff Andujar's unlawful termination no other case manager's office was locked by WESTHAB.

64.   As a proximate result of the company's sex discrimination against her, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

65.   As a further proximate result of the company's actions action taken because of Plaintiff's sex, she has suffered

and continues to suffer psychological and emotional injury, severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

66. The conduct of Westhab and of Jesse Johnson, Bob Miller, and Lois Hinds was outrageous and malicious, was intended to injure Plaintiff and was done with reckless disregard to Plaintiff's protected civil rights.

67. Plaintiff was unable, despite reasonable efforts to find comparable employment as a Caseworker from to July 10, 2004 to January 3, 2005.

## FACTUAL STATEMENT FOR PLAINTIFF NOORUL BARAK

68. Plaintiff is a 34 year old, Persian-Afghan female.

69. In or around June 19, 2003 Plaintiff began employment with WESTHAB as a case manager.

70. Beginning in or around November 2003, Plaintiff became the subject of Defendant Jesse Johnson's unwanted sexual advances.

71. On January 18, 2005, Plaintiff was terminated because she refused to acquiesce to Defendant Johnson's advances.

72. Mr. Johnson's advances included inappropriate comments including asking Plaintiff whether she had ever been involved in a "threesome."

73. Plaintiff repeatedly told Johnson that his advances were unwelcome and inappropriate. On one occasion Johnson told her to "relax" and that he knew where Plaintiff lived.

74.   In or around August 2004, Defendant Johnson had Plaintiff assigned to an office directly opposite his and subjected Plaintiff to constant staring, increased supervision and scrutiny.

75.   Upon arriving in her new office, Plaintiff discovered that the computer therein had been assigned to a former employee, Plaintiff Sandy Andujar.

76.    Upon information and belief, at the time Ms. Andujar was a Complainant in an open EEOC case against WESTHAB and Jesse Johnson for quid pro quo sexual harassment.

77.   Plaintiff informed her supervisor Defendant Hinds regarding Ms. Andujar's computer and was told by her to report same to Defendant Johnson.

78.   When Plaintiff informed Defendant Johnson of same he went into Plaintiff's office and began to read e-mails of a personal nature between Ms. Andujar and himself.

79.   Plaintiff became uncomfortable and asked to leave the room and Johnson asked her to stay while he read and ultimately deleted several personal e-mails from the computer.

80.   Following this incident, Defendant Johnson told Plaintiff not to go to her supervisor Hinds for any concerns but that she should go directly to him since he trusted her."

81.   Plaintiff told Johnson she was extremely uncomfortable about this arrangement since it would ultimately involve her bypassing her immediate supervisor.

82.   From in or around March 2004, to in or around July 2004, another WESTHAB employee, Denise Savitch continuously asked Plaintiff if she was "involved" with Defendant Johnson to which she responded in the negative.  This made Plaintiff extremely uncomfortable.

83.   In or around July 2004, Plaintiff told Defendant Hinds that she was being harassed by Ms. Savitch about her involvement with Johnson, that she was being sexually harassed by Mr. Johnson, and that she wanted a transfer to a different facility.

84.   Upon information and belief and contrary to WESTHAB policy, Defendant Hinds did not report the harassment to anyone.

85.    In or around December 2004, Plaintiff asked Defendant Johnson to be transferred.

86.   Plaintiff's request was denied and she was told by Defendant Johnson to stay away from other WESTHAB employees as they were "trying to get between us."

87.   Plaintiff thereafter called Ms. Juanita Dobbs of WESTHAB Human Resources to complain of the ongoing harassment.  Ms. Dobbs' response to Plaintiff was that she should "suck it up."

88.   In or around December 2004, Human Resources arranged a meeting to disc uss Plaintiff's complaint.  Present at the meeting was Kenneth Wray, Vice President, WESTHAB, Denise Savitch, Ms. Juanita Dobbs and Plaintiff.

89.   At that meeting Plaintiff was informed by Mr. Kenneth
Wray, Vice President that if she complained again, she would
be terminated.

90.   As a result of the ongoing harassment, Plaintiff began
to use sick time as she became physically ill and upset over
the events that were transpiring.

91.   In or around mid August 2004, Defendant Johnson asked
Plaintiff if she would be able to "keep it professional at
work" in the event that Plaintiff were to acquiesce to his
demands for a sexual relationship.

92.   Plaintiff's response was an unqualified no and
Plaintiff also asked Johnson for permission to report to her
supervisor, Lois Hinds instead of to Defendant Johnson
directly as he had previously ordered.

93.   Plaintiff's request was denied and Defendant Johnson
told her to continue to report to him directly.

94.   In or around October 2004, after months of repeated
requests, Defendant Johnson became angry with Plaintiff and
agreed that Plaintiff would no longer report to him
directly.

95.   Beginning in or around October 2004, Defendants
subjected Plaintiff to increased scrutiny and supervision by
having Defendant Hinds show Plaintiff e-mails from Defendant
Johnson asking for Plaintiff's work schedules and
whereabouts.

96.   Beginning in or around October of 2004, Defendant Hinds
closely scrutinized Plaintiff's work, and made it obvious to

Plaintiff that she was watching the clock upon Plaintiff's arrival to and departure from work.

97.  Prior to October of 2004, Plaintiff was not subjected to such strict scrutiny and supervision.

98.  After 2004, whenever male co-workers came into Plaintiff's office and Defendant Johnson was in his office he would make it a point to slam his door.

99.  In or around December 2004, Plaintiff informed Defendant Johnson that she wanted to apply for an upcoming position in a Special Needs Program.

100. Defendant Johnson told Plaintiff to apply for the Mulford Gardens project, for which Defendant Johnson was program director.

101. Plaintiff respectfully told Defendant Johnson that she was interested in the Special Needs Program, a different program which was not being overseen by him.

102. Johnson denied Plaintiff's request.

103. On January 18, 2005, Plaintiff was told by Kenneth Wray that she was being laid off due to budget cuts.

104.  Plaintiff asked Mr. Kenneth Wray if she could apply to other open positions and was told not to apply to any housing positions, but that she could apply to shelter positions.

105. Plaintiff asked Defendant Johnson why she was being laid off.  His response to her was to yell, "when I opened the door you would not come in.  Now, you come to me?  It's over!!"

106. On January 27, 2005 Plaintiff called Ms. Juanita Dobbs of Human Resources and asked to see her personnel file. Plaintiff's request was denied and she was told to bring an updated resume to Human Resources.

107. On or about January 28, 2005, Plaintiff submitted a resume to Juanita Dobbs of Human Resources, for the vacant positions in the agency.

108. Thereafter, Plaintiff called Defendant Johnson in an attempt to ask him if she could see her personnel file, his response was to hang up the phone.

109. Plaintiff called Defendant Johnson back to ask why he had done this and upon information and belief Defendant Johnson called the police and alleged that Plaintiff was stalking him.

110. Plaintiff was terminated because she refused to enter into a sexual relationship with Defendant Johnson and because she had knowledge about Plaintiff Andujar's sexual harassment case against Johnson.

111. As a proximate result of the company's sex discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

112. As a further proximate result of the company's actions action taken because of Plaintiff's sex, Plaintiff has suffered and continues to suffer psychological and emotional injury, severe and lasting embarrassment, humiliation and

anguish, and other incidental and consequential damages and expenses

113. Plaintiff has been unable, despite reasonable efforts to find comparable employment as a Caseworker from January 18, 2005 to present.

114. Plaintiff has been employed as a mental health associate from June 13, 2005 to present.

## FOURTEENTH AMENDMENT CLAIM

115. Based on paragraphs "1" through "114" herein, the Plaintiffs have been deprived by the Defendants of equal terms and conditions of employment and equal protection of the law in violation of the 14th Amendment.

## TITLE VII CLAIM

116. Based on paragraphs "1" through "115" herein, the Plaintiffs have been deprived by the Defendants of equal terms and conditions of employment based on sex in violation of Title VII and have committed acts of retaliation in violation of Title VII.

## PENDENT STATE LAW CLAIMS

117. Based on paragraphs "1" through "116" herein, the Defendants violated the rights of the Plaintiffs to be free of discrimination based on sex pursuant to New York Executive Law § 296 and caused Plaintiffs mental distress and economic harm, including lost wages.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

a) adjudging the conduct complained of: 1) in violation of the Fourteenth Amendment; 2) in violation of Title VII of the Civil Rights Act of 1964 and constituting sex discrimination and retaliation; and 3) in violation of the New York Executive Law § 296 and thereupon 4) awarding Plaintiffs back pay and other make whole relief and compensatory damages for mental distress, physical injury and economic harm therefor; and 5) awarding Plaintiffs punitive damages for intentional discrimination.

b) pursuant to the Court's pendent jurisdiction, adjudging the conduct of the defendants to be intentionally in violation of the New York Executive Law, to equal terms and conditions of employment and constituting invidious discrimination based on sex and thereupon awarding Plaintiffs punitive and compensatory damages for mental distress, physical injury and economic harm therefor;

c) awarding the Plaintiffs costs;

d) awarding the Plaintiffs Counsel fees;

e) awarding the Plaintiffs such other and further relief as the Court deems just and proper.

Dated: White Plains, New York
       October 21, 2005

                                    La Pietra & Krieger
                                    Attorneys For Plaintiffs

                                    By: _____
                                    Michael Krieger (MK 9980)
                                    30 Glenn Street
                                    White Plains, NY 10603
                                    (914)684-6000

18